IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRAD SHELLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:15cv513-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Brad Shelley ("Plaintiff") filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401, *et seq.*, and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*, on July 10, 2012. The applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding that Plaintiff had not been under a disability since January 1, 2009, the alleged onset of his disability. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No.

129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 15); Def.'s Consent to Jurisdiction (Doc. 14). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?

---

103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-four years old on the date of the administrative hearing before the ALJ, and had obtained a "high school equivalent education." Tr. 21, 17. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since January 1, 2009, the alleged onset date[.]" Tr. 17.[5] At Step Two, the ALJ found that Plaintiff suffers from the severe impairment of "bilateral hearing loss." Tr. 17. In addition, the ALJ found non-severe impairments, including "low IQ or learning disorder and obesity." Tr. 18. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 20. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Secondary to the claimant's severe hearing impairment and other non-severe impairments combined, the claimant can lift or carry up to fifty pounds occasionally and twenty-five pounds frequently. However, the claimant is limited to work environments with no more than moderate loudness, no loud or very loud environments. He is limited to work with no ladders, ropes, scaffolds, heights, or dangerous equipment. The claimant is able to carry out short, simple work instructions, make judgments regarding simple work-related decisions and adapt to occasional changes [in] workplace settings and routines.

---

[5]   The ALJ noted that, although Plaintiff worked intermittently during 2010-2012, Plaintiff testified at the hearing that "this was part-time work as a security guard and the earning amounts would not rise to the level of substantial gainful activity." Tr. 17.

Tr. 20.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "capable of performing past relevant work as a janitor and patient transporter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]"  Tr. 24.  The ALJ next found that, alternatively, even if Plaintiff's RFC precluded him from performing past relevant work, based upon the testimony of the VE, "there are other jobs that exist in significant numbers in the national economy that the claimant can also perform[.]"  Tr. 25.  The ALJ noted the following representative occupations: "dietary aid," "stocker," and "automobile detailer."  Tr. 25.  Accordingly, at Step Five, the ALJ determined that Plaintiff "has not been under a disability . . . from January 1, 2009, through the date of this decision[.]"  Tr. 26.

## IV.   PLAINTIFF'S ARGUMENT

Plaintiff's "Statement of the Issues" in his brief lists four separate arguments in his challenge to the Commissioner's decision: (1) "Whether the Commissioner erred as a matter of law in failing to order a consultative health examination;" (2) "Whether the Commissioner erred as a matter of law in finding that Mr. Shelley can perform the requirements of medium and unskilled work as the case record is absolutely devoid of evidence to support such a finding;" (3) "Whether the Commissioner erred in failing to apply listing 12.05 to claimant after his hearing loss;" and (4) "Whether the ALJ misconstrued claimant's testimony when he testified he lost his job when accused of

sleeping but actually couldn't hear but [the] ALJ put 'was fired for sleeping' in her decision." Pl.'s Br. (Doc. 16) at 4.[6]

## V. DISCUSSION

### A. The ALJ's failure to order a consultative health examination.

Plaintiff first argues that the ALJ erred in failing to order a consultative examination. According to Plaintiff:

> There is [a] sparsity of medical evidence in this case file in which the ALJ made her decision on. There is no true medical evidence at all, and given that the ALJ should have sent the claimant out for a consultative evaluation as there is no medical evidence in the file on which to base medium work level.

Pl.'s Br. (Doc. 16) at 10. Although Plaintiff appears to argue that there was insufficient medical evidence in the record regarding Plaintiff's "physical condition," *id.*, Plaintiff does not argue that, in fact, any specific condition of Plaintiff's, whether identified by the ALJ or not, precludes his ability to perform work consistent with the RFC articulated by the ALJ.

Plaintiff alleged disability based upon "hearing loss." Tr. 55. Indeed, the ALJ found Plaintiff's hearing loss to be a severe impairment and consequently reviewed and discussed the available medical evidence concerning the impairment while formulating Plaintiff's RFC. Tr. 20-22. However, the reason that there is a sparsity of evidence

---

[6] Plaintiff's brief makes clear that the first two separately numbered points raised by Plaintiff—that the ALJ erred in failing to order a consultative examination and that the record contains insufficient evidence to support the ALJ's RFC determination—are actually one argument. Hence, the court's discussion of these two points will be merged below into one subheading in this Opinion.

7

concerning any other problems with Plaintiff's "physical condition" is that there does not appear to be any physical condition—apart from Plaintiff's obesity, which the ALJ found to be a non-severe impairment—that affects Plaintiff's ability to perform work. Plaintiff conceded as much at the hearing:

> Q. All right. Now, Mr. Shelley, you don't have any physical problems, do you, like back or –
> A. No.
> Q. All right. You're not seeing a physician for anything else other than your ears, your hearing.
> A. No.

Tr. 46. Thus, because Plaintiff did not allege disability on the basis of any "physical condition" other than his hearing loss, and because he even disclaimed any physical problems other than his hearing, it is not surprising, much less problematic, that there is little medical evidence in the record about Plaintiff's "physical condition."

Although the ALJ is charged with conducting a full and fair, non-adversarial hearing, the burden to establish disability rests on the claimant. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). "The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Id.* (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). In this case, the record contained sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's impairments and his ability to perform work, especially considering that Plaintiff alleged disability only on the basis of his hearing loss and specifically denied having any physical problem other

8

than hearing loss.  Accordingly, the ALJ did not err in failing to order a consultative examination to develop additional evidence regarding Plaintiff's "physical condition."

### B.      The ALJ's failure to find Plaintiff disabled pursuant to Listing 12.05.

Plaintiff next argues that the ALJ erred in failing to find that Plaintiff's "low IQ or learning disorder" does not meet listing 12.05.  Pl.'s Br. (Doc. 16) at 11-12.  Plaintiff appears to argue that a previous IQ score attributed to Plaintiff "meets the Listing 12.05(C)," and that his hearing loss constitutes "'a physical or other mental impairment imposing additional and significant work-related limitations of function[,]'" under the listing.  *Id.*

Listing 12.05 covers the mental disorder now described as "Intellectual Disability."  "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22."  Listing 12.05.  While Plaintiff is correct that there is a full scale IQ score of 65 in the record, and that his hearing loss may constitute "a physical or other mental impairment imposing an additional and significant work-related limitation of function" for purposes of Listing 12.05(C), it does not follow that, without more, Plaintiff satisfies the Listing.  *See, e.g., Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citations omitted) ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal

9

effect' on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.").

Plaintiff first presented his argument about Listing 12.05(C) at the hearing before the ALJ. *See* Tr. 52. The ALJ rejected Plaintiff's argument at the hearing: "He has to meet the part of the listing for adaptive functioning prior to age 22, and the evidence does not indicate that he's had any adaptive functioning deficits." *Id.* In her written opinion, the ALJ clarified the reasons why she found that the record does not support that Plaintiff has deficits in adaptive functioning:

> The claimant performs numerous household chores, he can care for himself independently, he uses the computer on a regular and frequent basis, he cares for his children, he cooks and prepares meals and he drives. The claimant goes shopping independently and essentially is a stay at home father for his children. Additionally, the claimant was awarded custody of his then toddler age children during his divorce from his previous marriage, which would seem to directly support the claimant's ability to function in an independent manner. Finally, the claimant has been able to perform semi-skilled and skilled work previously and he testified that he was able to get all of his jobs on his own.

Tr. 18.

Plaintiff does not point to any evidence in the record which disputes the ALJ's finding that Plaintiff lacks deficits in adaptive functioning, or otherwise indicates that the ALJ's decision was not supported by substantial evidence. The Diagnostic and Statistical Manual of Mental Disorders ("DSM") explains that deficits in adaptive functioning broadly "refer to how well a person meets community standards of personal

independence and social responsibility, in comparison to others of similar age and sociocultural background." American Psychological Association, *DSM-V*, p. 37. As the ALJ recounted, there is substantial evidence in the record that Plaintiff is able to function independently and responsibly in accord with community standards. Evidence of Plaintiff's daily activities, including that Plaintiff performs many household chores, cares for his two children after he was awarded custody of them while they were toddler age, and has performed work at skilled and semi-skilled levels, was properly relied upon by the ALJ in concluding that Plaintiff did not have deficits in adaptive functioning for purposes of Listing 12.05(C). *See, e.g., Rodriguez v. Comm'r of Soc. Sec.*, 633 F. App'x 770, 773-74 (11th Cir. 2015) (finding that the claimant's activities of daily living, including doing household chores, grocery shopping, attending church, driving, and work history including jobs at the skilled and semi-skilled level provided substantial evidence to support the ALJ's determination that the claimant did not satisfy the diagnostic criteria of Listing 12.05(C)).

Plaintiff's I.Q. score and severe impairment of hearing loss are not sufficient to meet Listing 12.05(C) given the evidence in the record establishing that Plaintiff does not have deficits in adaptive functioning. Accordingly, the ALJ did not reversibly err in concluding that Plaintiff does not meet the diagnostic criteria of Listing 12.05(C).

### C. The ALJ's given reason for Plaintiff's termination from a previous job.

Plaintiff's final argument appears to be that the ALJ erred in finding that Plaintiff was terminated from his security guard position for sleeping on the job because Plaintiff

testified that, rather than sleeping, the "captain came around there and snuck up on me because I did not hear him." Tr. 36. In her decision, while articulating Plaintiff's RFC, the ALJ noted that "claimant worked part-time as a security guard after his alleged onset date and was fired for sleeping on the job, rather than as a result of any severe impairment." Tr. 22.

Plaintiff does not describe how he was prejudiced by the ALJ's remark, or how, even if the ALJ incorrectly found that Plaintiff was fired for sleeping rather than because of any impairment, the ALJ's ultimate findings about Plaintiff's RFC are not supported by substantial evidence. Indeed, the entirety of Plaintiff's argument is one sentence that simply asserts that the ALJ's remark is not consistent with Plaintiff's explanation at the hearing, followed by what appears to be a reminder to further develop the argument. *See* Pl.'s Br. (Doc. 16) at 12 ("Mr. Shelley testified that when working for DSI as a security guard he was fired when his supervisor walked up on him and mistook him for sleeping when in actuality he couldn't hear him (TR 22). Inconsistencies between testimony and what the ALJ used as a basis for denial."). However, Plaintiff does not describe any such additional inconsistencies, and his conclusory argument that somehow the ALJ reversibly erred in noting the reason given by DSI for terminating Plaintiff is without merit without a better showing that, indeed, he was unable to perform the requirements of the job which the ALJ relied upon in finding him not disabled. Thus, the ALJ did not reversibly err in noting that Plaintiff was terminated for sleeping on the job.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 12th day of October, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE